JOHNSON, Chief Justice,
concurs.
hi agree with the decision of this court, finding plaintiffs are entitled to a new trial. I write separately to emphasize the unpro *119 fessional and inappropriate nature of the trial judge’s behavior in this case.
In my view, it is undisputed that Judge Ellender engaged in bizarre and disturbing behavior during the jury trial of this matter such that the jury’s verdict cannot be allowed to stand. According to plaintiffs, Judge Ellender failed to preside over the trial from his position on the bench, but rather roamed around the entirety of the courtrooha during much of the trial. Judge Ellender would stop and look out of the windows in the courtroom while plaintiffs’ counsel was examining witnesses. Judge Ellender continuously moved around the courtroom, sitting in various chairs, and, inexplicably, sat in the jury box with the jurors while eating candy — all during witnesses’ testimony. The record also contains uncontroverted testimony from the plaintiff that Judge Ellender greeted the defense medical expert, defendant’s medical partner, with’ a handshake and embrace in front of the jury. Additionally, although neither counsel asked plaintiffs’ medical expert, Dr. Leo Murphy, any questions regarding his fees and expenses during the trial, after Dr. 'Murphy was released Judge 12Ellender took it upon himself to question plaintiffs’ counsel about the costs paid to Dr. Murphy in' the presence of the jury.
I find Judge Ellender’s actions unacceptable. La. C.C.P. art. 1791 provides: “The judge in the presence of the jury shall not comment upon the facts of the case, either by commenting upon or recapitulating the evidence, repeating the testimony of any witness, or giving an opinion as to what has been proved, not proved, or refuted.” Judge Ellender’s insidious actions of leaving the bench, "wandering around the courtroom, looking out the windows, eating candy and otherwise failing to pay- attention to the proceedings communicated to the jury in a non-verbal way his opinion that the trial was not serious and could be treated as a joke.
The inappropriateness of Judge Ellen-der’s behavior is further emphasized by La, C.E. art. 614. That provision permits the court to call and question witnesses, however when the case is. to be decided by a jury, the court’s participation in the trial is expressly limited by subsection D: “In a jury trial, the court may not call or exam-iné a witness, except upon the express consent of all parties, which consent shall not be requested within the hearing of the jury.” Although Judge Ellender’ did not question Dr. Murphy directly, his questioning of plaintiffs’ counsel regarding Dr. Murphy’s fees and costs while the jury was present violated the spirit and intent of the rule.
The cumulative- .effect of Judge Ellen-der’s. behavior and actions can only be viewed as resulting in prejudice to the plaintiffs’ case. Not. only were Judge Ellen-der’s actions a continuous source of distraction for the jury, I find his systematic, intentional and disruptive ¡behavior clearly undermined the seriousness of the court proceedings and the legitimacy of plaintiffs’ case.
I find Judge Ellender’,s. actions are even more disturbing considering this court | .^previously disciplined him twice for his conduct both on and off the bench.[1] Un *120 der the. facts and circumstances of this case, a new trial must be granted.

. In re Ellender, 09-0736 (La.7/1/09), 16 So.3d 351 (Judge Ellender suspended for thirty days without' pay due to his failure to treat a pro se petitioner's application for protection from domestic abuse seriously, and acting in a condescending and demeaning manner towards her); In re Ellender, 2004-2123 . (La.12/13/04), 889 So.2d 225 (Judge Ellender suspended for one year, without pay, with six months of that suspension conditionally deferred as a result of his conduct in appearing in public, at Halloween party, in costume ■ with afro wig, black-face makeup, and prison jumpsuit).